*268 By the Court,
Nelson, Ch. J.
The only question in the case is, whether the payment of the note is to be regarded as having been made by tlm defendant in his own wrong, by reason of the injunction restraining the payees from collecting or receiving the debts due Hempsted & Keeler.
It is a general rule, that courts of law will not lend their aid to enforce injunctions from chancery j nor do they ordinarily take any notice of such writs in the course of proceedings in suits at law. The case of Burt v. Mapes, (1 Hill, 649,) is an authority to show that, if the payees of the note in question had instituted a suit in this court against the defendant, we should not have received the facts now set up to avoid the ef: feet of the payment, in bar of the action ; and I do not see, therefore, how we can consistently say that payment was not well made. We should have allowed the plaintiffs to go on with the suit, and left the court of chancery to deal with them as it saw fit, under the particular circumstances of the case. That court might have excused the act and overlooked the breach of its process ; at all events, we do not assume the office of determining what shall or shall not be the effect or consequences of such a breach of its process. It is enough that the court of chancery possesses ample power to punish any unwarrantable interference with or violation of its mandates, and does not need the aid of this court. The aggrieved party has yet an opportunity to reach the assignees, and may be remunerated for all his damages by the infliction of proper fines, if the case be one which, in the ordinary course of proceedings and in the exercise of a sound discretion, would be regarded as demanding the interference of the court of chancery.
In Booth v. Booth, (1 Salk. 322, 6 Mod. 288, S. C.,) the court set aside an execution which had been issued after the expiration of a year without a scire facias ; and this, though the plaintiff had been tied up by an injunction issued on the defendant’s application. The court said they could not take notice of chancery injunctions. In Mitchel v. Cue, (2 Burr. *269 660,) the judges refused to set aside an execution, under like circumstances ; not, however, on the ground that the court was hound to notice the injunction, but for the reason that the party should not be allowed to take advantage of his own act in delaying the plaintiff. In Gorton v. Dyson, (1 Brod. Sf Bing. 219,) the court entertained the argument of a cause, notwithstanding an injunction in the court of exchequer against all further proceedings in the C. B. And I observe also that, in Franklin v. Thomas, (3 Meriv. 234,) it was said to have been the opinion of Lord Thurlow, that where an injunction is obtained, even after execution levied, though it is a breach of it for the party to call upon the sheriff to pay over the money, yet, if he voluntarily pay, it is no breach of the injunction to receive it. Lord Eldon thought that, in such a case, the person receiving the money would be ordered to pay it into court. In the case before us, the defendant was not made a party, nor was he enjoined ; and it would seem from the doctrine of Lord Thurlow, that the payment by the defendant would, even in the court of chancery, be a discharge of the debt. Much more must it be so regarded in a court of law.
Unless we are bound by some settled principles of law to take notice of this injunction, (and I think we are not,) it will certainly lead to a more just and equitable arrangement in respect to all parties concerned, for the plaintiffs to appeal to the tribunal whose process has been disregarded. It seems that this money has been in fact applied in payment of a debt due from Hempsted & Keeler, to whose estate the note belonged ; and if the defendant should now be held accountable for the money, this consideration might go to mitigate his loss. Again : possibly the court of chancery would be disposed to follow out the idea of Lord Eldon, and call upon the Clinton Bank for the whole or a part of the money. The powers of that court over all the parties concerned in the payment and receipt of the money upon the note in question, are much more ample and extensive than those possessed by courts of law. *270 In the exercise of those powers, the former court would be enabled to bring out a more full developement of the circumstances connected with the whole matter than can possibly be done here. It might, perhaps, regard the trifling sum for which the note was sold by the receiver. These considerations should induce us to leave the question of a breach of the in junction, and its effect, to the exclusive cognizance of the court of chancery.
I am of opinion, therefore, as well upon the fitness and pro piiety of the thing, as upon authority, that we cannot take no tice of the injunction, and, consequently, that a valid' payment of the note was established. The report of the referee must be set aside ; costs to abide the event.
Ordered accordingly.